## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

GILBERT JUNIOR DAVIS,

Defendant.

Crim. Action No. TDC-16-0585-03
Civil Action No. TDC-20-3510

## MEMORANDUM OPINION

Defendant Gilbert Junior Davis has filed a Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 in which he alleges that his 2018 conviction and sentence on three counts of using a communications device to facilitate a drug felony, in violation of 21 U.S.C. § 843(b), must be vacated on multiple grounds, including insufficiency of the evidence, failure to disclose exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), an error in the calculation of his advisory sentencing guidelines range under the United States Sentencing Guidelines, and ineffective assistance of counsel. The Motion is fully briefed, and the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be denied.

## BACKGROUND

On December 7, 2016, a federal grand jury returned an Indictment against Davis and seven other defendants that charged Davis with conspiracy to distribute and possess with intent to distribute 100 grams or more of phencyclidine ("PCP"), in violation of 21 U.S.C. § 846. Before trial, Davis was charged in a Third Superseding Indictment with that same charge (Count 1) and

four counts of using a communications device to facilitate a drug felony (Counts 2-5), in violation of 21 U.S.C. § 843(b).  On January 18, 2018, Davis was convicted after a jury trial of three of the § 843(b) counts (Counts 2-4) and acquitted on the fourth § 843(b) count (Count 5).  The jury failed to reach a verdict on the drug conspiracy charge in Count 1.

Following his conviction, Davis filed Consolidated Post-Trial Motions seeking judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and a new trial pursuant to Rule 33 on the grounds that there was insufficient evidence to support the convictions, that the jury's failure to reach a verdict on Count 1 required dismissal of the counts of conviction, and that the verdict was against the weight of the evidence.  At the sentencing hearing on September 7, 2018, the Court denied the motions.  At sentencing, in calculating the advisory guidelines range under the United States Sentencing Guidelines ("the Guidelines"), the Court found a drug quantity of between 400 and 700 grams of PCP, which resulted in a base offense level of 26 and a Guidelines range of 92 to 115 months.  In so finding, the Court included only the drug quantity directly at issue in the conduct underlying Counts 2-4 and declined to find that the evidence established a higher drug quantity based on other activity that was the subject of Counts 1 and 5 on which no convictions were obtained. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Davis to a total term of imprisonment of 92 months.

On direct appeal, Davis argued that the trial judge's failure to recuse herself required that his convictions be vacated, that the evidence presented at trial was insufficient to support his convictions, and that the jury's failure to reach a verdict on Count 1 was fatally inconsistent with his convictions on Counts 2-4. *See United States v. Davis*, 801 F. App'x 75, 76 (4th Cir. 2020). On January 17, 2020, the United States Court of Appeals for the Fourth Circuit, after considering

2

and rejecting all of Davis's arguments, affirmed Davis's conviction and sentence. *See id.* at 78-80. On December 4, 2020, Davis filed the present Motion with this Court.

## DISCUSSION

In his Motion, Davis asserts several grounds for relief. He argues that (1) the Court improperly sentenced him using an incorrect Guidelines base offense level; (2) the Government withheld unspecified exculpatory material that would have aided his trial preparation, in violation of *Brady*; (3) the evidence presented at trial was insufficient to support his convictions; and (4) his trial counsel provided constitutionally ineffective assistance of counsel by failing to alert the Court to Amendment 484 to the Guidelines ("Amendment 484"), failing to object to unclear and misleading jury instructions, failing to argue that the Government had constructively amended the Indictment, failing to call additional witnesses, and failing to provide oral argument at a hearing on his Motion to Suppress Unlawfully Intercepted Wire and Electronic Communications. The Government argues that all of Davis's claims except his insufficiency of the evidence claim have been procedurally defaulted and that, in any event, all of the claims fail on the merits.

## I.    Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct the sentence on the basis that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2018).  The petitioner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

In § 2255 proceedings, a hearing is necessary where there are material disputed facts or where the court must make a credibility determination in order to resolve the motion. *See United*

*States v. Witherspoon*, 231 F.3d 923, 926-27 (4th Cir. 2000). However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

## II.    Procedural Default

The Government first argues that all of Davis's grounds for relief other than his claim of insufficiency of the evidence are barred by the doctrine of procedural default because he did not assert them on direct appeal. When a petitioner fails to pursue a claim on direct appeal that could have been asserted, the claim is procedurally defaulted, and the petitioner is barred from raising it in a § 2255 motion, unless the petitioner can "show cause and actual prejudice resulting from the errors of which he complains or . . . demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quoting *Mikalajunas*, 186 F.3d at 493). To show prejudice, a petitioner must demonstrate "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *Frady*, 456 U.S. at 170). "[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence." *Mikalajunas*, 186 F.3d at 493. To demonstrate actual innocence, a petitioner must establish "actual factual innocence" in that the "petitioner did not commit the crime of which he was convicted"

and must do so by clear and convincing evidence. *Pettiford*, 612 F.3d at 282 (quoting *Mikalajunas*, 186 F.3d at 493-94).

A claim of ineffective assistance of counsel is not subject to procedural default even if it was not asserted on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003) (holding that the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). The Court will therefore address Davis's ineffective assistance of counsel claim on the merits. *See infra* part IV. However, as discussed below, the Court finds that Davis's claims of an alleged error in the calculation of the base offense level and of an alleged *Brady* violation have been procedurally defaulted.

### A.    Base Offense Level

In his Motion, Davis asserts that the Court erred in finding a base offense level of 26 because it failed to consider the purity of the PCP in calculating the drug quantity, failed to require the Indictment to charge a specific drug quantity, and failed to submit the issue of the drug quantity to the jury and provide jury instructions relating to drug quantity. Although he acknowledges that he failed to raise these issues on appeal, Davis does not articulate any cause for this failure beyond stating that "[m]y appeal lawyer wanted to raise other issues." Mot. at 6-7, ECF No. 580. All of the relevant facts underlying this claim were available to Davis at the time of his appeal. To the extent that this claim is based in part on the argument that Davis's base offense level was calculated incorrectly because the Court did not apply Amendment 484, that provision became effective on November 1, 1993. Under these circumstances, Davis has not demonstrated cause for the procedural default.

As for prejudice, as the Court noted at sentencing, Davis has not identified any legal requirement that the issue of the drug quantity on a § 843(b) charge must be presented to the jury. *See* 9/7/2018 Sentencing Tr. at 25, ECF No. 498. As discussed below, whether based on Amendment 484 or otherwise, there was no error in the calculation of the drug quantity. *See infra* part IV.A. Davis has therefore not established prejudice. Finally, barring extraordinary circumstances, such as when the sentence exceeds the statutory maximum penalty, "misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice" that would excuse procedural default in the absence of cause and prejudice. *See Mikalajunas*, 186 F.3d at 496. The Court therefore finds that Davis's claim that the Court erred in its base offense level calculation is procedurally defaulted.

### B.    *Brady* Violation

In the Motion, Davis also asserts, for the first time, that his conviction should be vacated because the Government withheld unspecified exculpatory information that would have helped him prepare for trial. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. There are three components of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) there was prejudice in that the evidence was material to the defense. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).

6

Again, because Davis acknowledges that he failed to raise this claim on direct appeal, the Government argues that it is subject to procedural default. When considering the issue of procedural default of a *Brady* claim, the Court "must first decide whether that default is excused by an adequate showing of cause and prejudice." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Ordinarily, the suppression of exculpatory information may itself constitute cause for the failure to assert a *Brady* claim on direct appeal, and if the suppressed evidence is material to the outcome of the case, there may be sufficient prejudice to overcome the procedural default. *See id.*

Here, Davis has provided no purported cause for his failure to raise the alleged *Brady* violation on direct appeal beyond stating that "[m]y appeal lawyer wanted to raise other issues." Mot. at 9-10. He has neither asserted that the existence of the alleged *Brady* material was unknown to him at the time of his direct appeal nor identified any external impediment to asserting this claim on appeal. Without having identified the substance of the information allegedly withheld, Davis cannot show that it was material to the outcome of his case and thus has not shown prejudice. *See Kyles*, 514 U.S. at 433-34. Because Davis has shown neither cause for his failure to raise this issue on direct appeal nor prejudice, Davis' *Brady* claim is procedurally barred.

**III.    Sufficiency of the Evidence**

Davis further argues that his Motion should be granted because the trial evidence was insufficient to for the jury to find him guilty on Counts 2-4 beyond a reasonable doubt. In his reply brief, Davis specifically argues that the evidence presented at trial was insufficient because it failed to establish an agreement or conspiracy, it failed to prove the elements of a § 843(b) offense because it did not prove a substantive offense of drug distribution, and the testimony by a cooperating witness, Robert Beasley, was inconsistent and did not prove Davis's guilt. As noted in the Motion, Davis asserted a claim of insufficiency of the evidence through counsel both in his

7

Consolidated Post-Trial Motions filed before sentencing, which were denied, and on direct appeal before the Fourth Circuit. The Fourth Circuit rejected Davis's insufficiency argument and affirmed. *See Davis*, 801 F. App'x at 79-80.

Davis's effort to reassert this claim fails because "it is well settled that [a defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)); *see United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" claims "already addressed and rejected on direct appeal" in a § 2255 motion); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court" on direct appeal). On direct appeal, Davis "challenge[d] the validity of his convictions given the inconsistent verdicts and contend[ed] that the evidence was insufficient to support his convictions." *Davis*, 801 F. App'x at 76. In rejecting Davis's insufficiency argument, the Fourth Circuit found that "[t]he trial testimony supported the existence of an ongoing conspiracy with . . . Beasley," that "the inconsistent verdicts in this case do not require reversal of Davis's convictions," and that "Davis's convictions were supported by sufficient evidence." *Id.* at 79-80. The Fourth Circuit's ruling bars Davis from relitigating insufficiency of the evidence in his § 2255 Motion. *See Dyess*, 730 F.3d at 360. To the extent that Davis believes the Fourth Circuit reached the wrong conclusion, "the remedy was to file a petition for rehearing or . . . seek a writ of certiorari to the Supreme Court, not to file a § 2255 motion." *Id.* at 360 n.5. Accordingly, the Motion will be denied as to Davis's claim of insufficiency of the evidence.

## IV.     Ineffective Assistance of Counsel

Davis's remaining argument is that his trial counsel engaged in ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs:  deficient performance and prejudice. *Id.* at 692. First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.    Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, a petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on

9

prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In his Motion, Davis asserts that his trial counsel provided ineffective assistance of counsel when he (1) did not bring Amendment 484 to the attention of the Court at sentencing; (2) failed to argue that the jury instructions were inadequate or misleading; (3) did not argue that there had been a constructive amendment of the Indictment; (4) failed to call certain witnesses to testify at trial; and (5) failed to provide oral argument on Davis's Motion to Suppress. Davis also notes that he "tried to fire [his] lawyer twice and the Government would not appoint [him] another lawyer," and that he "had to go to trial with a lawyer that [he] did not trust." Mot. at 5, 10. Although these statements may have been offered to explain his failure to assert ineffective assistance of counsel at an earlier stage of his case, to the extent Davis was seeking to assert that his lack of trust in his trial counsel established another form of ineffective assistance, he has failed to do so because the Sixth Amendment does not guarantee "a meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *see also United States v. Perez*, 661 F.3d 189, 191 (4th Cir. 2011) (stating that "the right of an indigent defendant to be represented by counsel . . . . is not absolute; it cannot deprive courts of the exercise of their inherent power to control the administration of justice"). The Court will address the five identified grounds for Davis's claim of ineffective assistance of counsel.

### A.    Amendment 484

Davis argues that his trial counsel was ineffective by failing to alert the Court to the applicability of Amendment 484 to the calculation of the drug quantity and to object to the Court's finding of the quantity of PCP used to determine his base offense level. United States Sentencing

Guideline ("U.S.S.G.") § 2D1.1, the guideline containing the Drug Quantity Table used to establish the base offense level for controlled substance offenses, provides that the drug quantity is calculated based on "the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1 (U.S. Sentencing Comm'n 2015). Amendment 484 inserted into the commentary for U.S.S.G. § 2D1.1 the following language to clarify the meaning of "mixture or substance":

> Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

U.S.S.G. § 2D1.1 application note 1. Davis argues that pursuant to Amendment 484, the quantity of PCP to be considered in identifying the base offense level should have included only the pure PCP, not the additional liquid in which it was mixed.

This Court previously analyzed the applicability of Amendment 484 to the facts of this case and rejected a substantially similar argument advanced by Davis's co-defendant, Mitchell Felix Brooks, in his own § 2255 motion. *See Brooks v. United States*, No. TDC-16-0585-02, 2021 WL 1663554, at *7-8 (D. Md. Apr. 28, 2021). Brooks, who had pleaded guilty, argued at sentencing that "the drug amount was inaccurately calculated because, pursuant to . . . Amendment 484, the Court did not properly deduct the weight of materials that were not themselves controlled substances." *Id.* at *3. This Court determined that Brooks's claim relied on "a misreading of Amendment 484" and that Amendment 484 "does not require that all cutting agents and other substances must be excluded from the drug weight calculation." *Id.* at *7. "Rather, it excludes from that calculation only those other substances that cannot be consumed as part of the drug." *Id.*

Where the Statement of Facts agreed to by Brooks provided that the PCP at issue was found in a liquid mixture with a liquid cutting agent, such that the PCP was not "trapped in fiberglass or beeswax that had to be removed before the drug could be consumed" or otherwise subject to Amendment 484, the Court found that the weight of the entire mixture was properly considered. *Id.*

At Davis's trial, the evidence established that Davis acted as a middleman, obtaining large amounts of PCP from Brooks and another supplier, and selling the PCP to his customers in and around Maryland. *See Davis*, 801 F. App'x at 76. A Government expert witness, Sergeant Alvin Cardinal of the Metropolitan Police Department of Washington, D.C., testified that the PCP at issue was found in bottles mixed with a liquid cutting agent, that PCP is typically sold in that form by the ounce or gallon, and that it is most commonly consumed by dipping a cigarette into the liquid mixture, or dredging plant material in the liquid and rolling it up, before smoking. *See* 1/10/2018 Trial Tr. at 120-23, 127-29, 138, ECF No. 508. Unlike in *United States v. Wilson*, 175 F.3d 1018, 1999 WL 153062 (4th Cir. 1999) (unpublished), cited by Davis, in which the court applied Amendment 484 because the cutting agent was ether, and the court referenced another case in which there had been evidence detailing a process of allowing the ether cutting agent to evaporate and the cigarettes to dry before they were sold, *id.* at *1 (citing *United States v. Brown*, 921 F.2d 785, 788 (8th Cir. 1990)), Sergeant Cardinal testified that a user typically waits until the liquid is soaked into the tobacco before smoking, not that the cigarette is dried out before use. Thus, as the Court concluded in *Brooks*, the liquid mixtures of PCP were ready for sale and consumption in that form, and they did not contain material that had to be separated before the PCP could be used, so Amendment 484 was not applicable. *See Brooks*, 2021 WL 1663554 at *7; *see also, United States v. Blalock*, 29 F. Supp. 2d 691, 692 (D. Md. 1998) (holding that Amendment

12

484 does not apply to a mixture of PCP and a liquid because "PCP is regularly consumed in a liquid form by spraying it on marijuana or tobacco cigarettes," such that "it was not necessary for the additives present in the mixture to be removed prior to consumption"). Where Amendment 484 did not apply to the drug quantity calculation due to the nature of the PCP liquid mixture in this case, Davis's trial counsel's failure to raise the issue was neither deficient nor prejudicial. Accordingly, the Court rejects Davis's claim that his trial counsel was constitutionally ineffective in failing to invoke Amendment 484 at sentencing.

### B.      Jury Instructions

Next, Davis claims that his trial counsel was ineffective in failing to "argue jury instructions," which he claims were "misleading or inadequate to guide the jury to deliberation." Mot. at 5. As to deficient performance, Davis must demonstrate that his trial counsel's failure to request a jury instruction or modification to a jury instruction, or to object to an improper jury instruction, constituted "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Hope v. Cartledge*, 857 F.3d 518, 523 (4th Cir. 2017) (finding deficient performance based on the failure to request an alibi instruction). Davis, however, has not identified any missing jury instruction that he argues should have been sought by his trial counsel, or any particular jury instruction given at trial which misstated the law. Under these circumstances, the Court cannot find that Davis's counsel acted in deficient manner. Indeed, the record reflects that Davis's trial counsel adequately engaged in the process of formulating the jury instructions. During the Pretrial Conference and at various points during the trial, Davis's trial counsel noted that certain proposed jury instructions deviated from the model jury instructions and pressed the Government to adhere to the model instructions or clarify any deviations from the model instructions. *See* 1/3/2018 Trial Tr. at 39-41, ECF No. 503; 1/9/2018

13

Trial Tr. at 14, ECF No 507; 1/10/2018 Trial Tr. at 10-11, ECF No. 508. On the last day of trial, the Court specifically noted that it had granted certain changes proposed by Davis's counsel, including an instruction that the testimony of a particular Government witness "must be examined with greater scrutiny than the testimony of any other witness" because of his use of or addiction to drugs at the time of the events in question or at trial. Jury Instruction No. 23, ECF No. 361; *see* 1/12/2018 Trial Tr. at 3-4, ECF No. 509. Particularly where Davis's trial counsel was an active participant in the process of drafting jury instructions and successfully argued for changes to benefit his client's defense, his general performance relating to the jury instructions was not constitutionally deficient.

As to prejudice, when reviewing a trial counsel's failure to request a jury instruction, courts consider: "(1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." *Hope*, 857 F.3d at 523-24 (quoting *United States v. Luck*, 611 F.3d 183, 189 (4th Cir. 2010)). Again, Davis has not identified any instruction that should have been given or any error in the jury instructions that were given. The Court therefore cannot find any prejudice arising from the jury instructions. Davis's ineffective assistance of counsel claim based on the jury instructions will be denied.

### C.    Constructive Amendment

Davis also argues that his trial counsel's failure to argue that there was a constructive amendment of the Indictment rendered his performance ineffective. "When the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment . . . occurs." *United States v. Randall*, 171 F.3d 195, 203

14

(4th Cir. 1999). Such a constructive amendment, also known as a fatal variance, "violates the Fifth Amendment right to be indicted by a grand jury" by effectively altering the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment. *Id.*

Davis has not explained what action, by the Government or the Court, effected a constructive amendment to the Third Superseding Indictment, which charged Davis with one count of conspiracy to distribute and possess with intent to distribute PCP and four counts of use of a communications device to facilitate a drug felony. His assertions that the evidence was insufficient to sustain the verdict, and that the jury instructions were "misleading or inadequate," are too vague to demonstrate that there was a constructive amendment that should have caused his trial counsel to object. Mot. at 5. Because Davis has not identified an instance in which the jury instructions or the evidence presented at trial altered the crimes charged in the Indictment, the Court does not find that trial counsel's failure to complain of a constructive amendment was deficient performance or resulted in prejudice. Accordingly, the claim of ineffective assistance of counsel on this issue fails.

### D.    Trial Witnesses

Davis further asserts that his trial counsel's "[f]ailure to call key witnesses for cross examination" constituted ineffective assistance. *Id.* In evaluating whether trial counsel's decisions not to call certain witnesses constitute ineffective assistance of counsel, courts must consider the reasonableness of counsel's explanation "in light of the circumstances of counsel's challenged conduct, and . . . from counsel's perspective at the time." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). "In so doing, we must indulge a strong presumption . . . that, under the circumstances, the challenged action might be considered sound

trial strategy." *Id.* Courts afford "enormous deference" to a "decision whether to call a defense witness" when it involves "a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks." *Id.*

Davis does not specify who these key witnesses are, what testimony they could have offered, how a failure to call them constituted deficient performance, or how the absence of these witnesses prejudiced his defense. At trial, Davis expressed an interest in having a subpoena issued to require his former attorney, Eugene Gorokhov, to testify on the issue of whether the Government was monitoring and recording his phone calls in 2015—one year earlier than the Government's timeline suggested. *See* 1/4/2018 Trial Tr. at 8-9, ECF No. 504. To the extent that Davis's argument is that his trial counsel should have called Gorokhov as witness, his claim fails because, as reflected in statements made to the Court on the record at trial, his trial counsel, in fact, contacted Gorokhov to inquire whether he had probative evidence on this issue, and Gorokhov told him that he had "no recollection" of the events at issue and "no basis upon which to make . . . a claim" that the recording began in 2015. *Id.* at 9. Where the record evidence establishes that Gorokhov had no evidence on this issue, the decision of trial counsel not to subpoena Gorokhov to testify was not deficient and, at worst, was a matter of permissible trial strategy. *See Terry*, 366 F.3d at 318 (noting that "[a] fundamental reality of trial practice is that often, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses"). In turn, where the record reflects that Gorokhov had no probative evidence to offer, Davis has not shown how the failure to call him to testify resulted in prejudice. Accordingly, Davis's ineffective assistance claim based on the failure to call defense witnesses will be denied.

### E.    Motion to Suppress

Lastly, Davis claims that his trial counsel's failure to offer oral argument to supplement a written brief on Davis's Motion to Suppress Unlawfully Intercepted Wire and Electronic Communications amounted to ineffective assistance of counsel.  Davis's predecessor trial counsel filed an eight-page brief on the Motion to Suppress which argued for suppression of the wiretapped communications because "the applications do not include a 'particular description of the nature and location of the communications facilities' where the interception will occur," such that it was an unauthorized roving wiretap, and because the affidavit seeking an extension of the wiretap order "does not explain why an extension . . . would allow the government to obtain evidence it did not previously obtain." Mot. Suppress at 4-5, ECF No. 155.  The brief was accompanied by 200 pages of exhibits, consisting primarily of the applications, affidavits, and orders relating to the wiretap. *See* ECF Nos. 155 and 158.  At a motions hearing on December 11, 2017, Davis's trial counsel declined to offer additional argument beyond the briefs, and the Court (Xinis, J.) denied the Motion on the grounds that the wiretap was not a roving wiretap and the affidavit seeking an extension was sufficient. *See* 12/11/2017 Hearing Tr. at 15, ECF No. 502.

The record therefore establishes that trial counsel pursued a Motion to Suppress and submitted a complete brief with relevant attachments.  There is no claim that the brief was deficient in any way.  Davis's argument therefore appears to be that his trial counsel was ineffective because he failed to offer oral argument at the motions hearing.  This argument fails.  Oral argument is not required by the Federal Rules of Criminal Procedure or the Local Rules of the United States District Court for the District of Maryland. *See* Fed. R. Crim. P. 47(b) ("A motion—except when made during a trial or hearing—must be in writing, unless the court permits the party to make the motion by other means."); D. Md. Local R. 105.6, 207 ("Unless otherwise ordered by the Court .

17

. . all motions shall be decided on the memoranda without a hearing."). *Cf. United States v. Birtle*, 792 F.2d 846, 848-49 (9th Cir. 1986) (holding that appellate counsel's failure to appear at oral argument was not ineffective assistance of counsel in part because "[o]ral argument on appeal is not required by the Constitution . . . nor is it necessarily essential to a fair hearing"). At the motions hearing, Davis's trial counsel stated that the brief submitted by predecessor counsel "covered the waterfront in a complete enough fashion for this matter to be at issue before the Court, and I have nothing to add to that." 12/11/2017 Hearing Tr. at 7-8. Davis has not offered any basis to conclude that the brief lacked any critical factual or legal point such that the failure to offer additional facts or law through oral argument was deficient performance under *Strickland*. *See Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). He has also not argued, must less provided a basis to conclude, that the Court's ruling on the Motion to Suppress was erroneous, and that such oral argument had a "reasonable probability" of altering the outcome on the Motion to Suppress and, by extension, the result of Davis's overall criminal proceeding. *Id.* at 694. Because Davis has failed to demonstrate deficient performance and prejudice arising from the failure to provide oral argument on the Motion to Suppress, the ineffective assistance of counsel claim will be denied.

## V.    Certificate of Appealability

A prisoner has no absolute entitlement to appeal a district court's denial of a § 2255 motion. *See* 28 U.S.C. § 2253(c)(1)(B) (2018). To appeal this Court's denial of his § 2255 Motion, Davis must first obtain a certificate of appealability ("COA"). *Id.* A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court reaches the merits of a § 2255 motion, a petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When the district court denies a § 2255 motion on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the § 2255 motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.* Because Davis has not satisfied either of these standards, this Court will not issue a COA.  Davis may still seek a COA from the Fourth Circuit.  *See* Fed. R. App. P. 22(b)(1).

<h2 style="text-align:center">CONCLUSION</h2>

For the foregoing reasons, the Petition will be DENIED and DISMISSED. The Court declines to issue a certificate of appealability.  A separate Order shall issue.

Date: February 28, 2022

THEODORE D. CHUANG
United States District Judge

19